# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD; and TRANSPORTATION INSURANCE CO., | ) ) Civ. No. 10-1054 ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ROBINSON FANS HOLDINGS, INC. On its own behalf and as successor to ROBINSON INDUSTRIES, INC.; and ROBINSON FANS, INC., | ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

## SYNOPSIS

In this declaratory judgment action involving insurance coverage relating to underlying litigation pending in another federal district, Plaintiffs have filed a Motion for Reconsideration of this Court's Opinion and Order dated April 7, 2007 ("April 7 Opinion"), which found that under applicable standards, the underlying complaint "possibly pleads a triggering 'occurrence'" with respect to the duty to defend, and that I could not "rule out the possibility that something other than faulty workmanship is blamed for the equipment failure." In the alternative, Plaintiffs seek partial summary judgment, <u>inter alia</u>, on grounds that the "gist of the action" doctrine applies to preclude the duty to defend, and that extrinsic facts, along with the parties' purchase order, entitle them to judgment. In addition, Defendant has filed a Motion to Stay this action, pending the conclusion of the underlying litigation.

For the following reasons, all of the parties' Motions will be denied.

OPINION

## I. APPLICABLE STANDARDS

Motions for reconsideration are granted sparingly, "[b]ecause federal courts have a strong interest in finality of judgments." Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D.Pa. 1995). The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Cafe v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999).

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Omnicare, Inc., 382 F.3d 432 (3d Cir. 2004).

## II. MOTION FOR RECONSIDERATION

Plaintiffs first urge that this Court rely on Millers Capital Ins. Co. v. Gambone Bros. Devel. Corp., 941 A.2d 706 (Pa. Super. 2007), and ProDent, Inc. v. Zurich U.S., 33 Fed. Appx. 32 (3d Cir. 2002), which they contend are inconsistent with Schuylkill Stone Corp. v. State Auto. Mut. Ins. Co., 735 F. Supp. 2d 150 (D.N.J. 2010), and Wasau Underwriters Ins. Co. v. State Auto Mut. Ins. Co., 557 F. Supp. 2d 502 (D.N.J. 2008).[1] Plaintiffs further assert that the District Court for the District of New Jersey incorrectly applied Pennsylvania law in the latter two cases, and that I in turn incorrectly relied thereon.

---

[1] Plaintiffs also contend that L-J, Inc. v. Bituminous Fire and Marine Ins. Co., 567 S.E. 2d 489 (S.C. 2002), referred to in a footnote to the April 7 Opinion, does not represent Pennsylvania law. I did not follow or rely on that case, which dealt with a different factual scenario than the one presented. I do note, however, that the Kvaerner court discussed the South Carolina Court's approach in Bituminous Fire as "instructive." Kvaerner metals Div. of Kvearner U.S., Inc. v. Commercial union Ins. Co., 908 A. 2d 888, 898 (Pa. 2006).

In Gambone, the underlying action alleged that houses planned, developed, and built by defendant were defectively constructed, leading to water damage to the homes' interiors. Gambone, 941 A.2d at 713. One set of plaintiffs in that action alleged "construction defects and product failures," and their claims included those for breach of contract. Id. at 709. The second averred the use of defective stucco, and that the defects were "the result of poor workmanship during the initial construction of the Home, including….improper or faulty design, implementation, workmanship, and supervision of the application of the exterior finish of the Home…." Id. at 709-10. The second group also asserted breaches of implied warranty. Id. The court considered whether the allegations in the underlying action potentially constituted an "occurrence" that triggered coverage, under policy language identical to that in the case at bar. Id. at 711.

In Gambone, both complaints averred that the insured "built homes with defective…exteriors, windows, and…seals, and the court noted that both complaints were "based on claims for faulty workmanship." Id. at 713. Further, "no one dispute[d] that the…claims [were] predicated on faulty workmanship." Id. at 718. Instead, the dispute centered on the insured's contention that ancillary water damage to non-defective work in the homes constituted an "occurrence." Id. In that respect, the court held that "damage caused by rainfall that seeps through faulty home exterior work to damage the interior of a home is not a fortuitous event that would trigger coverage." Id. at 714. In so doing, the court explained that the word "occurrence" refers to accidental phenomena, and not "claims predicated on faulty workmanship." Id. at 718. Thus, the court concluded that foreseeable natural acts that exacerbate the effect of faulty workmanship are not "accidents." Id. at 713.

Plaintiff urges that Gambone demonstrates that Schuykill Stone Corp. v. State Automobile Mut. Ins. Co., 735 F. Supp. 2d 150 (D.N.J. 2010) and Wausau Underwriters Ins. Co. v. State Auto. Mut. Ins. Co., 557 F. Supp. 2d 502 (D.N.J. 2008), which were cited in my April 7 Opinion, misapplied Pennsylvania law. Plaintiff does not, however, explain how Gambone is inconsistent with or undermines the pertinent conclusions reached in either of those cases. In Gambone, the court did not address any argument relating to the source of the duty allegedly breached. Instead, the discussion in Gambone centered on the source or cause of the damages claimed -- i.e., those resulting from faulty workmanship, as opposed to those for ancillary damage flowing from the faulty workmanship, which were urged, but not held, to be an "occurrence." Gambone, 941 A. 2d at 711-12.

In the April 7 Opinion, I referred to Schuykill and Wausau in the context of exploring the source of the duty allegedly breached. Neither of these cases focused on the issue of ancillary damage flowing from faulty workmanship; instead, both cases looked to the allegations in the Complaint, and the distinction between duties imposed by law as a matter of social policy, versus by mutual consensus. Schuykill, 735 F. Supp. 2d at 158; see also Wausau, 557 F. Supp. 2d at 33-34. Thus, Gambone's focus differed from, and was not contrary to, Schuykill and Wausau. Moreover, neither the focus nor language of Gambone in any way undermines the conclusions reached in the latter cases. Gambone, therefore, does not affect the analysis or outcome reflected in my April 7 Opinion.

In addition, Plaintiff urges that the April 7 Opinion incorrectly varies from Prodent, Inc. v. Zurich U.S., 33 Fed. Appx. 32 (3d Cir. 2002), which arose under an occurrence-based policy like the one at issue. In Prodent, the Court considered whether an insurer was liable to pay a jury's verdict finding that defendant had negligently performed plumbing work during the

renovation of plaintiff's offices -- the wrongful act was, "specifically, [the] installation of [pipes other than those] called for by the drawings." Id. at *2. The insured argued in favor of coverage, contending that the jury had returned a verdict for negligence, and not breach of contract, and therefore the "gist of the complaint" was not contractual. Id. at 34. Noting that "Pennsylvania law is not entirely consistent on this point," the Court found that the claim was based upon "negligent workmanship, similar to a claim of professional liability or poor performance," and that the damages sustained were to "undo" the insured's error or mistake in using the improper pipe, and not of an accident. Id. at 35. Thus, there was no covered "occurrence" under the policy. Id.

Prodent is not inconsistent with the analysis or conclusions reached in my April 7 Opinion, or the cases relied on therein. First, Prodent involved the alleged failure to perform work in accordance with drawings -- an acknowledged subject of mutual consensus -- which, under the reasoning of my April 7 Opinion and the cases cited therein, would be akin to uncovered "faulty workmanship," rather than fortuitous accident. ProDent reflects the principle, that the presence of negligence or contract claims is not determinative; neither can per se convert a claim into something that, factually, it is not. Second, ProDent was decided at a conclusive, post-verdict stage of a coverage determination. Our case, at this stage, involves only the Complaint's initial potential, liberally construed, to fall within the insurance policy and thus trigger the broad duty to defend. My conclusion -- that based on the broad allegations in the underlying Complaint, I was unable to rule out the possibility that it assigned blame to something other than uncovered faulty workmanship -- reflected the provisional nature of applicable standards. Prodent does not warrant reconsideration or alteration of that conclusion.

5

## II. MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Gist of the Action

In the alternative, Plaintiffs move for partial summary judgment, on grounds that the "gist of the action" doctrine nullifies their duty to defend in this case. In a footnote to the April 7 Opinion, I referred to Berg Chilling Sys. v. Hull Corp., 70 Fed. Appx. 620 (3d Cir. Pa. 2003), which indicated that the "gist of the action" does not apply to a duty to defend analysis. In Berg Chilling, the Court of Appeals for the Third Circuit cited with disapproval the trial court's reliance on a Pennsylvania Superior Court case that formulated the gist of the action test in the duty to defend context. Id. at 624. In rejecting that test, our Court of Appeals clearly stated that "[t]he [gist of the action] test has not been adopted by the Pennsylvania Supreme Court and it does not comport with the case law of this Circuit." Berg Chilling Sys. v. Hull Corp., 70 Fed. Appx. 620, 624 (3d Cir. 2003).[2]

Plaintiffs presently observe that Berg Chilling predated Erie Ins. Exchange v. Abbott Furnace, 972 A. 2d 1232, 1237-39 (Pa. Super. 2009), which found "no error by the trial court in its determination that the gist of the action doctrine precluded coverage under [the policies] because…the duty…arose from the terms of the contract and not from the larger social policies as embodied by the law of torts." Id. at 1239. The existence of Abbott, however, does not alter the pertinent precedential landscape. Berg Chilling declined to apply the "gist of the action" test to an insurer's duty to defend, as inconsistent with the law within this Circuit. It so declined absent adoption of the doctrine by the Pennsylvania Supreme Court, and despite its use by the

---

[2] In Berg Chilling, the Court of Appeals reversed Berg Chilling Sys. v. Hull Corp., No. 00-5075, 2002 U.S. Dist. LEXIS 12281, at *6 (Apr. 2, 2002), in which the district court stated that "Pennsylvania's 'gist of the action' test provides the key" to resolving the dispute of whether the claim constituted a covered "occurrence." I note, too, to the extent that Prodent refers to the gist of the complaint, that case predated Berg Chilling.

6

Pennsylvania Superior Court.[3] To date, the Pennsylvania Supreme Court has not adopted the doctrine, and our Court of Appeals has not revised the applicable law within this Circuit. Thus, I shall continue to follow Berg Chilling.

Moreover, as I suggested in my April 7 Order, applying the doctrine in the present context would not comport with either the purposes of the doctrine, or the standards that I must apply in assessing the duty to defend. Certainly, the gist of the action doctrine, in its conceptual foundation, overlaps with an analysis of whether a complaint states a claim of faulty workmanship that lies outside of insurance coverage, or instead a covered "occurrence." For purposes of the doctrine, "[t]he critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of 'breaches of duties imposed by mutual consensus agreements between particular individuals,' while the latter arises out of 'breaches of duties imposed by law as a matter of social policy.'" Meridian Mut. Ins. Co. v. James Gilligan Builders, No. 8-1995, 2008 U.S. Dist. LEXIS 109018, at *12 (E.D. Pa. June 18, 2008). As a result, as Plaintiffs suggest, it is not necessarily inappropriate to borrow or refer to principles from the gist of the action doctrine to aid in coverage cases.[4] Although the similarities between the inquiries may make their differences appear those of form rather than substance, the two analyses cannot be entirely conflated.

---

[3] Indeed, the Pennsylvania Superior Court applied the gist of the action doctrine to a coverage question in Freestone v. New England Log Homes, Inc., 819 A. 2d 550 (Pa. Super. 2003). That case predated the Court of Appeals' decision in Berg Chilling, but did not alter the Court of Appeals' conclusion therein. Accordingly, there is no reason to presume that Abbott would have any effect on the law within this Circuit. Likewise, Davis v. Maryland Ins. Co., 38 F. Supp. 387 (E.D. Pa. 1999), to which Plaintiffs refer, predated Berg Chilling and is without decisive effect here.

[4] As Plaintiff points out, courts often employ the doctrine as an "aid" in coverage determinations. For example, Transp. Ins. Co. v. Bordo, Inc., 2009 U.S. Dist. LEXIS 27266, at *26 (M.D. Pa. Mar. 20, 2009), referred to the "gist of the action" doctrine as a corollary principle, in connection with a coverage determination. In Bordo, however, unlike in this case, "the allegations in the underlying litigation [did] not allege any form of negligence, but instead rel[ied] on contract theories of liability." Id. at *27. Appropriately, therefore, the majority of the court's opinion is devoted to the principles enunciated in Kvaerner and its progeny, and it referred to the gist of the case without analyzing the doctrine or relying on it per se.

The gist of the action doctrine relates to the "difficulties inherent in allowing a party to proceed with both tort and contract claims for harm that arose in connection with a contractual relationship" -- such as differences in damages and standards of proof. Pediatrix Screening, Inc. v. TeleChem Int'l, Inc., 602 F.3d 541, 548 (3d Cir. Pa. 2010). Thus, the doctrine typically operates to resolve whether "tort claims that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract." See Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3d Cir. 2001). Otherwise stated, "[u]nder this doctrine, a plaintiff is barred from bringing a tort claim when such a claim is merely another way of stating the party's breach of contract claim or when the success of such a claim is wholly dependant [sic] upon the terms of the contract." Advanced Tubular Prods. v. Solar Atmospheres, Inc., 149 Fed. Appx. 81, 84 (3d Cir. 2005). A court should be slow to dismiss claims under the gist of the action doctrine. Orthovita, Inc. v. Erbe, No. 7-2395, 2008 U.S. Dist. LEXIS 11088, at *12 (E.D. Pa. Feb. 14, 2008). In other words, the doctrine is used to assess which claims in a case should be permitted to proceed.

In this case, I am not asked to determine whether Pennsylvania law bars the plaintiff in the underlying action from recovering on a negligence claim, due to the contractual essence of the case.[5] Instead, the appropriate parameters of that litigation are issues for the presiding court. If that court decides that the gist of the action was contractual, otherwise bars the underlying plaintiff's negligence claims, or causes the underlying plaintiff to clarify his claims, the declaratory issue before me would take on a decidedly different tenor. Again, my decision on the issues presented in the challenged April 7 Order, as required by applicable standards, was based on whether any single claim in the underlying complaint as it stands -- not as it should or

---

[5] Indeed, the underlying action is pending in federal court in Iowa, and the parties have not indicated which state's laws will apply to that case.

8

might eventually stand -- potentially comes within the insurance policy, as liberally construed in the insured's favor, with all doubts resolved in favor of coverage. These standards, in this context, are ill-suited for pairing with a true gist of the action analysis. Absent clear guidance from either the Pennsylvania Supreme Court or the Court of Appeals for the Third Circuit, I decline to depart from the well-established parameters set by applicable authority.

### B. Underlying Complaint and Purchase Order

Plaintiffs also contend that the allegations in the underlying complaint, and attachments thereto, establish as a matter of law that the claims are contractual rather than extracontractual.[6] In particular, Plaintiffs point to the allegation that the underlying plaintiff "relied on the skill and judgment of [insured] to design, manufacture, assemble and sell" the fans, and that Defendant breached its duty by "selling defective goods"; that the insured agreed to provide the underlying plaintiff with equipment "of the quality specified"; that the purchase order refers to the buyer's right to cancel the order if "the goods are defective or not in conformity with specifications or drawings, if any"; and that the insured agreed to provide equipment "recommended by [insured] as conforming to [underlying plaintiff's] performance specification." In addition, Plaintiffs refer to the purchase order's representation that the goods are "merchantable."

Plaintiffs argue that these terms in the purchase order demonstrate that the underlying plaintiff could not bring a negligent design claim if the insured had not contracted to provide that plaintiff with equipment of "the quality specified" that "me[t] the specifications." Therefore, they suggest, providing improperly designed goods must be a failure to perform the contract, rather than negligence -- thus rooting it in faulty workmanship, rather than in an "occurrence" under the policy. I do not, however, see any reason why the contract is a prerequisite to the

---

[6] Although they raise the argument in the "gist of the action" context, the argument does not necessarily rely on the doctrine, and thus I address it independently.

underlying plaintiff's negligent design claim. Plaintiffs do not explain why, in the absence of an agreement of sale, a purchaser cannot sue a product's manufacturer for negligent design; such claims are staples of product liability litigation. Additionally, the purchase order's generic references to "quality" or "specifications," without more, do not clarify that the complaint seeks only to address failures in contract performance.

Plaintiffs further argue that, due to the purchase order's provisions, this case is akin to Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F. 3d 591 (3d Cir. 2009). In a footnote to my April 7 Opinion, I noted that CPB might appear inconsistent with other cases, but could be viewed as consistent therewith, because extracontractual "industry standards," allegedly breached, were incorporated into the parties' contract for sale of a particular nutritional supplement.[7] I also noted, however, that in CPB the issue was uncontested and thus the court engaged in no analysis. This lack of analysis renders CPB unhelpful in the present context, and I cannot apply the case to reach the conclusion Plaintiffs urge. In addition, the fairly generic requirement that goods be "merchantable" and of a "specified" quality, made part of the present parties' agreement, is not necessarily parallel to industry standards that relate to a particular nutritional supplement; indeed, I am offered no grounds for treating the two as equivalent. For all of these reasons, I will not follow CPB to reach the result that Plaintiffs urge.

**C. Source/Timing of Duty**

In connection with its Motion for Partial Summary Judgment, Plaintiff contends that the underlying complaint in fact asserts breaches of duty arising under contract only. It takes issue, in part, with the concept that the timing of the insured's conduct -- whether pre-or post-contract -

---

[7] Elsewhere, the Court of Appeals has suggested that breach of industry standards might fall outside the realm of contract duties. In Pro-Dent, 33 Fed. Appx. at 34, the Court of Appeals stated that "[t]he District Court's reasoning that the claims were 'essentially contractual' is problematic in the context of the facts here, where … the Complaint alleged that [the insured]'s performance was below not only a contractual standard but also an industry standard of care."

10

- determines whether the duty to defend attaches. I clarify that my April 7 Order did not create any per se rule in that regard; find the chronological distinction determinative of this issue in this case; or rely on the chronology of the present insured's allegedly wrongful conduct. I did not hold that faulty workmanship should be deemed "accidental" if it was performed pre-contract, or happens to violate extracontractual as well as contractual duties. Instead, these considerations bear on determining whether the underlying complaint alleges faulty workmanship in the first instance. Thus, in accordance with cases such as Lang Tendons, Inc. v. Northern Ins. Co. of NY, No. 00-2030, 2001 U.S. Dist. LEXIS 2358 (E.D. Pa. Mar. 7, 2001),[8] and depending on surrounding circumstances, pre-contractual conduct, "for example," might create an occurrence, or that pre-contractual design work "might be" measured against tort, rather than contractual, standards of care.

Neither Lang Tendons nor I depended on a hard line between pre- and post-contract faulty workmanship. Instead, the line was drawn between breaches of duty arising from agreement, and breaches of duty arising independent of agreement. In Lang Tendons, the court briefly noted the timing of the duties to illustrate its finding that the underlying complaint in that case "contain[ed] allegations of breach of duties that can be interpreted as arising independently of the supply contract," and that, based on the allegations of the complaint, the insured "could still be held liable for…damages based on traditional common law negligence principles." Id. at **21-22. Likewise, the determinative factor in my April 7 Order, in accordance with Kvaerner

---

[8] Plaintiff asserts, without analysis, that Lang Tendons would be decided differently today. In that case, however, the court relied on Redevelopment Auth. of Cambria County v. International Ins. Co., 685 A.2d 581 (Pa. Super. 1996), and Snyder Heating v. Pennsylvania Manufacturer's Association Insurance Co., 715 A.2d 483 (Pa. Super. 1998). Kvaerner approved Snyder Heating, and although it did not adopt Redevelopment Authority, our Court of Appeals has predicted that the Pennsylvania Supreme Court would likely reach the same conclusion as reached in that case. Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 598 (3d Cir. 591). Therefore, it does not appear that Kaverner would, or should, affect the viability or outcome of Lang Tendons.

11

and the principles that Plaintiffs advocate, was whether the complaint clearly attributed the alleged injuries to faulty workmanship, or some other cause.[9]

**D. Extrinsic Evidence**

Finally, Plaintiffs submit that several facts developed outside of this action demonstrate that the negligent design alleged in the underlying action was, in fact, accomplished pursuant to mutual consensus and the underlying parties' agreement. Plaintiffs ask that I rely on affidavits and briefs submitted in connection with dismissal motions in the underlying action, as well as a complaint filed in a different lawsuit. However, "under Pennsylvania law, it is not appropriate for the Court to conduct an examination of matters outside the four corners of the underlying complaint to determine whether a duty to defend exists." First Mercury Ins. Co. v. Rossi, 2011 U.S. Dist. LEXIS 35845, at **20-21 (E.D. Pa. Mar. 31, 2011). Even if additional facts have surfaced in the underlying matter, the duty to defend must be measured solely on the basis of the four corners of the complaint against the insured. See State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 108 n. 3 (3d Cir. 2009); Nationwide Mut. Fire Ins. Co. v. Malofiy, No. 10-2410, 2011 U.S. Dist. LEXIS 29702, at **30-31 (E.D. Pa. Mar. 22, 2011). Plaintiffs have not offered any authority to support my consideration of admissions in the underlying litigation in this context, nor for departing from the general rule that at this stage, I exclusively consider

---

[9] Plaintiffs assert that the "cause of the event, and not… the source of the obligations," determines whether a claim rests on "faulty workmanship." The distinction between cause of injury and source of duty, in this context, is highly susceptible to becoming an exercise in semantic tail-chasing. As Plaintiffs also point out, the failure to properly perform work is not an "accident," because it lacks the necessary degree of fortuity under Kvaerner. "In other words, it is largely within the insured's control whether it supplies the agreed-upon product, and the fact that contractual liability flows from the failure to provide that product is too foreseeable to be considered an accident." CPB Int'l, Inc., 562 F.3d at 596. In other words, Kvaerner rooted the idea of fortuity in whether one is to be held responsible for causing the event, due to the failure to perform a particular type of obligation. Thus, if the event allegedly resulted from the insured's failure to perform its contractual obligations, there was no accident; instead, that is the type of claim that would be covered by a performance bond. If the event was caused by the insured's failure to perform some other obligation, the situation might be markedly different. As a matter of factual proof and evidence, causation is a discrete inquiry. In the context of a cause of action, however, the "cause" of an event is inextricably tied to legal basis for imposing liability, which depends on who breached what duty. When assessing the allegations of a complaint in this context, cause and duty are not practically separable.

12

the factual allegations in the underlying complaint. Cf. Dale Corp. v. Cumberland Mut. Fire Ins. Co., No. 9-1115, 2010 U.S. Dist. LEXIS 65052, at **24-25 (E.D. Pa. June 30, 2010); Nationwide Mut. Ins. Co. v. Garzone, No. 7-4767, 2009 U.S. Dist. LEXIS 85528, at **52-53 (E.D. Pa. Sept. 17, 2009).

Plaintiffs offer Haines v. State Auto Prop. & Cas. Ins. Co., No. 10-1946, 2011 U.S. App. LEXIS 4684 (3d Cir. Mar. 9, 2011), for the proposition that I may consider extrinsic evidence in this context. In Haines, our Court of Appeals found no error in the use of extrinsic evidence because the evidence "was used to show that no exception to [an] exclusion applied, and not to support the application of [an] exclusion." Id. at **4-5. This holding is consistent with the principle that the "group of cases that permits extrinsic evidence to resolve the duty to defend" is the subset "that concerns exceptions to exclusions." Air Prods. & Chems. v. Hartford Accident & Indem. Co., 25 F.3d 177, 180 (3d Cir. 1994). The April 7 Opinion under consideration, and the matters to which it pertained, did not involve exclusions or exceptions thereto. Thus, Haines does not apply.

In addition, Plaintiffs cite to Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553 (3d Cir. 2008), which involved a pre-litigation claim that a third party had been injured on the insured property. Id. at 556. At the time of the claim, the insurer's investigation determined that the insured rented out rather than occupied the property at the time of the accident. Id. at 556. Thus, it denied coverage for the accident, based on a rental exclusion in the policy. Id. at 556-57. Subsequently, the third party filed suit, alleging that the insured resided at the insured property. Id. at 560. The insurer denied a defense and coverage, based on its earlier investigation. Id. at 557. The insured, however, argued in favor of coverage, based on an exception to the rental exclusion. Id. at 558. The district court found, based on the insurer's pre-

13

litigation investigation, that there was no duty to defend the post-investigation suit. The Third Circuit approved, because the insurer's earlier investigation had confined the claim to an uncovered recovery, and the subsequent complaint's "conclusory allegations" did not therefore create a duty. Id. at 561.

This matter, however, differs materially from Gardner. In that case, the court first took note of extrinsic evidence in connection with an exception to the rental exclusion relied on to deny coverage. Id. at 558-59. Accordingly, the matter fell into the subset of cases allowing extrinsic evidence relating to the duty to defend, as discussed supra. Second, the case is consistent with the principle that the duty to defend exists, inter alia, "where the potential for a covered claim exists and the determination of coverage depends upon the existence or non-existence of undetermined…facts raised against the insured." Germantown Ins. Co., v. Martin, 595 A.2d 1172, 1174 (Pa. Super. 1991). In Gardner, coverage depended on the existence of a fact raised against the insured, which had been disproved pre-complaint. The court considered pre-complaint evidence relating exclusively to the question of coverage as based on the untruth of a fact alleged in the underlying complaint; the extrinsic evidence was not considered to resolve the parameters of the causes of action asserted in the underlying litigation.[10]

In this case, Plaintiffs urge not that I consider the existence or non-existence of a fact on which coverage relies, but that I consider extrinsic evidence to interpret the underlying complaint, and de facto shape the underlying claims and the causation theories that the underlying plaintiff may pursue. In other words, Plaintiffs ask not that I consider extrinsic

---

[10] This is also true with Germantown Ins. Co. v. Martin, 595 A. 2d 1172 (Pa. Super. 1991), and Erie Ins. Exchange v. Heisey, 81 Pa. D. & C. 4th 18 (Lebanon 2007), to which Plaintiffs also cite. In both cases, insurers sought judgments of non-coverage when the underlying complaints alleged unintentional shooting, and the policies at issue excluded or did not cover intentional acts. The courts considered evidence regarding whether the shooter's act was intentional. As in Gardner, but unlike in the present case, coverage depended on the existence or non-existence of a fact alleged in the underlying complaints -- in Germantown and Heisey, the fact of intent -- and both courts considered evidence regarding that fact.

14

evidence to clarify whether determinative facts pleaded are true, but instead to classify and define the underlying plaintiff's theories of liability. To do so would constitute a significant and undesirable intrusion into the underlying litigation.[11] It is the presiding court's province, and not mine, to mold the complaint resting under its adjudicative authority; my role is merely to assess the language of that complaint against the language of the insurance policy.

## II. MOTION TO STAY

Defendant has filed a Motion to stay or administratively close this action pending the conclusion of the underlying litigation. District courts have discretion to decide whether to entertain declaratory judgment actions. Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F. 2d 1213, 1222 (3d Cir. 1989). Merely because an action is pending in state court is not, without more, a sufficient basis for declining to exercise jurisdiction over a declaratory matter. Foremost Ins. Co. v. Erickson, No. 7-195, 2007 U.S. Dist. LEXIS 58017, at *10 (E.D. Pa. Aug. 7, 2007). Defendant contends that the factors outlined in State Auto Ins. Co. v. Summy, 234 F. 3d 131, (3d Cir. 2001), support declining jurisdiction. Those factors are a general policy of restraint when the same issues are pending before another court; the inherent conflict of interest between the duty to defend a suit and an attempt to characterize the suit as subject to an exclusion; and avoidance of duplicative litigation. Id. at 134.

Discretion under the Declaratory Judgment Act is to be exercised with consideration[] of practicality and wise judicial administration." Id. at 136. Therefore, "[t]he

---

[11] For other reasons, the Pennsylvania Supreme Court disapproved a somewhat similar approach in Kvearner Metals Div. of Kvearner United Stated, Inc. v. Commercial, 908 A. 2d 888 (Pa. 2006). The Pennsylvania Superior Court had noted that the complaint "appears to set forth a claim arising from a failure to properly perform a contract," which would not constitute an "occurrence." See Kvaerner, 825 A. 2d at 893. It then looked to expert reports indicating that the alleged damages could have been caused by other events, which could have constituted an "occurrence." Kvaerner, 908 A. 2d at 894. Accordingly, it concluded that summary judgment based on the lack of an "occurrence" was improper. Id. The Pennsylvania Supreme Court found that this "departed from the well-established precedent of this Court requiring that an insurer's duty to defend…be determined solely from the language of the complaint against the insured," and that there was no reason to depart from the rule. Id. at 896.

central question is whether the controversy may 'better be settled' in the state court…." <u>United States v. Pennsylvania Dept. of Envtl. Res</u>., 923 F. 2d 1071, 1075 (3d Cir. 1991). In cases where underlying liability is factually intertwined with coverage questions, and where a declaration would affect and interfere with the underlying action, declining jurisdiction might be appropriate. <u>See</u>, <u>e.g.</u>, <u>Columbia Gas of Pa. v. American Int'l Group</u>, No. 10-1131, 2011 U.S. Dist. LEXIS 7919 (W.D. Pa. Jan. 27, 2011).

In this case, it would be inappropriate to stay the action, for various reasons. For example, Plaintiffs' Complaint raises the applicability of several exclusions to coverage, which have not been adjudicated, and are not at issue in the underlying litigation. Moreover, my approach to this matter thus far, as discussed <u>supra</u>, does not require that I delve into Plaintiff's theories of liability and causation, and thus does not interfere with the state court litigation. Accordingly, at this time, the dangers of intrusion and duplication do not weigh in favor of declining jurisdiction here. In addition, under the circumstances, it appears likely that Plaintiffs will seek to revisit other issues surrounding their duty to defend as the underlying litigation unfolds.

Moreover, the parties have been directed to engage in global mediation proceedings involving this case, the underlying action, and a related matter pending before Judge Conti of this Court. I am confident that these proceedings can be structured in such a way as to alleviate Defendant's concerns about duplicative discovery, as well as the inherent conflict potentially posed by the insurer's positions. In sum, I agree that Plaintiffs would be prejudiced in various respects if this action were stayed, and do not find sufficient justification for issuing a stay or administrative closure. The <u>Summy</u> factors, and other considerations, do not support a stay. Therefore, I will deny Defendant's Motion.

16

**CONCLUSION**

In sum, Plaintiff's Motion for Reconsideration and Motion for Partial Summary Judgment will be denied. Again, I have not found that the duty to defend has been conclusively established. In my April 7 Opinion, I found only that based on the present allegations, construed liberally in favor of the insured, "there is no basis for decisively concluding either that the complaint alleges failure to exercise care in duties imposed by contract, or those imposed extra-contractually by law…Although it may ultimately prove otherwise, the four corners of the complaint -- to which the relevant inquiry is bound -- potentially point to a breach of duty imposed by law via social policy, and independent of the contract, which caused the catastrophic failure." As I stated in that Opinion, the duty to defend lasts only until the insurer can confine the claim to recovery that is not within the scope of coverage, and Plaintiff believes that it will eventually so confine the claim. At this early stage in these and the underlying proceedings, however, this has not been decisively accomplished. Likewise, the Motion to Stay will be denied, as it would be inappropriate to stay this matter at this time.

An appropriate Order follows.

**ORDER**

AND NOW, this 18th day of July, 2011, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Reconsideration or Partial Summary Judgment (Docket No. [46]) and Defendant's Motion to Stay (Docket No. [58]) are DENIED.

BY THE COURT:

s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge