**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NATIONAL FIRE INSURANCE | ) | |
| COMPANY OF HARTFORD; and | ) | Civ. No. 10-1054 |
| TRANSPORTATION INSURANCE CO., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | | |
| v. | | |
| | | |
| ROBINSON FANS HOLDINGS, INC. | | |
| On its own behalf and as successor to | | |
| ROBINSON INDUSTRIES, INC.; and | | |
| ROBINSON FANS, INC., | | |
| | | |
| Defendants. | | |

**OPINION AND ORDER**

**SYNOPSIS**

In this civil action, Plaintiffs (collectively "CNA," as they are all subsidiaries of CNA Financial Corporation) sought a declaration of non-coverage for an event that became a suit against the insured Defendant, captioned <u>Archer-Daniels-Midland Co.  ("ADM") v. Robinson Industries, Inc.</u>, No. 10-100 (S.D. Iowa).[1]  The Declaratory Judgment Complaint rests on a Commercial General Liability policy ("GL" policy) issued by one Plaintiff, and a Manufacturers Errors and Omissions policy ("E & O" policy) and Umbrella Policy issued by the other.   The Defendant insured counterclaimed, asserting breach of contract (Count I), breach of the implied duty of good faith and fair dealing (Count II), estoppel (Count III), waiver (Count IV), and statutory bad faith pursuant to 42 P.S. § 8371 (Count V).  Defendant now contends that trial is necessary to resolve its claims for breach of the covenant of good faith and fair dealing, and

---

[1] I refer to Defendants in the singular, as they share an identical interest herein.

violation of Pennsylvania's bad faith statute. [2]   In the underlying suit, CNA defended the

underlying suit under the E & O policy subject to a reservation of rights, but disclaimed coverage

under the GL and Umbrella policies.   The underlying suit concluded, with a verdict for

Robinson, following a bench trial in the United States District Court for the Southern District of

Iowa.  That judgment has not been appealed.

Presently before the Court is Plaintiffs' Motion for Summary Judgment on the

counterclaims against them.  For the following reasons, the Motion will be granted in part, and

denied in part.

## OPINION

### I.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(c).   In considering a motion for summary judgment, the Court must

examine the facts in a light most favorable to the party opposing the motion.  International Raw

Materials, Ltd. v. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990).  The moving party

bears the burden of demonstrating the absence of any genuine issues of material fact.  United

States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004).  Rule 56, however, mandates the entry of

judgment against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof.

---

[2] I concur in Defendant's assessment of which counterclaims remain extant in this case.  It appears that the resolution of the underlying action moots Counts III (estoppel) and IV (waiver), as both of those Counts pertain to the never-materialized indemnification duty.  Likewise, Defendant cannot maintain any other counterclaim to the extent that it is based on a failure to attend the duty to indemnify.  Similarly, the Umbrella policy only would come into play if the underlying insurer's obligations were exhausted.  The Umbrella Policy was never triggered or eroded, and thus no claim can lie as regards that policy.  Likewise, because Plaintiffs tendered a defense under the E & O policy, there can be no causes of action relating to that policy.

Celotex Corp. v. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).  Generally,

summary judgment is inappropriate when a case hinges on issues of credibility or state of mind.

Coolspring Stone Supply v. American States Life Ins. Co., 10 F.3d 144, 148 (3d Cir. 1993).

## II.  PLAINTIFFS' MOTION

### A.  STATUTORY BAD FAITH

Under Pennsylvania law, "[i]n an action arising under an insurance policy, if the court

finds that the insurer has acted in bad faith toward the insured," the court may award the claimant

interest, punitive damages, court costs, and attorney fees. 42 Pa. Cons. Stat. § 8371.

> To recover for bad faith, 'a plaintiff must show by clear and convincing evidence
> that the insurer (1) did not have a reasonable basis for denying benefits under the
> policy and (2) knew or recklessly disregarded its lack of a reasonable basis in
> denying the claim.' …The defendant can defeat a plaintiff's claim by showing that
> it had a reasonable basis to deny the claim.

Verdetto v. State Farm Fire & Cas. Co., No. 11-4567, 2013 U.S. App. LEXIS 1372, at *4 (3d
Cir. Jan. 17, 2013).

> This standard requires that the plaintiff show "that the evidence is so clear, direct,
> weighty and convincing as to enable a clear conviction, without hesitation, about
> whether or not the defendants acted in bad faith." Indeed, "the clear and
> convincing standard is a stringent one, surpassed in the law only by proof beyond
> a reasonable doubt."

MP III Holdings, Inc. v. Hartford Cas. Ins. Co., No. 8-4958, 2011 U.S. Dist. LEXIS 72370, at
**52-53 (E.D. Pa. June 30, 2011) (citations omitted).

In accordance with this standard, the insured's burden is "commensurately high."  Smith

v. Allstate Ins. Co., 904 F. Supp. 515, 525 (W.D. Pa. 2012).  "Nonetheless, if a reasonable jury

could find that [the insurer] did not have a reasonable basis for denying benefits under the policy

and knew of or recklessly disregarded this, summary judgment is not appropriate."  Id.

In a bad faith case, "[t]he requirement is that the insurer consider in good faith the

interest of the insured as a factor in coming to a decision …."  Clunie-Haskins v. State Farm Fire

& Cas. Co., 855 F. Supp. 2d 380, 388 (E.D. Pa. 2012).   An insurer's conduct need not be

fraudulent to constitute bad faith, but mere negligence or bad judgment does not constitute bad

faith. Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005).   Moreover,

to defeat a claim of bad faith, an insurer need not show that its actions were correct; instead, it

must show that it had a reasonable basis for its decision to deny benefits. See Leach v. Nw. Mut.

Ins. Co., No. 01-2364, 2005 U.S. Dist LEXIS 39966, at *30 (W.D. Pa. Dec. 22, 2005).

### 1.   Bad Faith Conduct

From Defendant's submissions, it appears that the counterclaims now focus on Plaintiffs'

initial disclaimer of a defense under the GL policy, and on its continued failure to provide a

defense under the GL policy after this Court's Orders dated April 7, 2011 and July 18, 2011.   As

Defendant states, "the one factual question still relevant in this case" is whether Plaintiffs acted

reasonably in failing to defend under the GL policy.   As the parties should now be aware, and as

has been the case since the inception of this litigation, their submissions frame the issues before

the Court.   I will concentrate my inquiries accordingly.[3]

This action was filed on August 10, 2010, and the underlying action followed two days

later.   The GL policy had a $1 million dollar per occurrence limit, with an unlimited

supplemental duty to defend.   The E & O policy had a $2 million limit of liability, along with a

duty to defend, and provided that the policy limit would be reduced by payment of defense costs.

On November 8, 2010, Defendants disclaimed coverage under the GL policy, but continued to

defend the underlying suit under the E & O policy.

By Opinion and Order dated April 7, 2011, I ruled on the parties' cross-motions for

Summary Judgment regarding whether the underlying complaint pleaded a covered "occurrence"

---

[3] Although Defendant outlines other conduct of Plaintiffs, it characterizes such conduct as evidence of bad faith, and not as constituting bad faith in itself.

under the GL policy.   In response to the parties' arguments, I determined that I could not rule out the possibility that the underlying complaint pleaded an occurrence, sufficient to trigger the defense obligation, rather than uncovered faulty workmanship.   In that Opinion, I emphasized that the parties had raised and briefed that narrow issue, and thus I did not address whether other policy provisions impacted Plaintiffs' defense obligation.   I also decided that similar issues under the E & O policy were unripe, as Plaintiffs had, in fact, assumed the defense of the action under the E & O policy.   Subsequently, Plaintiffs moved for reconsideration of my conclusion regarding a triggering "occurrence"; in that motion, they also sought partial summary judgment on additional grounds.   They contended that the "gist of the action" doctrine precluded their duty to defend, and also that extrinsic facts entitled them to judgment.   By Order dated July 18, 2011, I denied Plaintiffs' requests for relief.   At no time did Plaintiffs seek judgment on any other grounds for non-coverage raised in their Declaratory Judgment Complaint.

   Approximately one year later, in July, 2012, Defendant learned, during depositions, that defense costs were still being charged solely against the E & O policy, thus decreasing policy limits available for potential indemnity.   Accordingly, based on this Court's Orders, Defendant demanded that the claim be defended under the GL policy.   By letter dated August 6, 2012, Plaintiffs responded that this Court had not found a duty to defend under the GL policy, but that it would retroactively and prospectively allocate defense costs 50/50 between the GL and E & O policies, pending conclusion of this action.[4]   In so doing, Plaintiffs cited to the fact that I had addressed only the narrow "occurrence" question presented by the parties' Motions.   Plaintiff

---

[4] Plaintiffs assert that because Defendant, in this action, sought a defense under both the E & O policy and the GL policy, it is estopped from challenging the 50/50 allocation of defense costs.   There is no suggestion, however, that Defendant intends to suggest that the equal allocation was improper.   Instead, it challenges the complete failure to defend under the GL policy, which occurred prior to the 50/50 allocation.

also pointed out that, upon reconsideration, I had "not found that the duty to defend ha[d] been conclusively established."

Initially, I find that no reasonable jury could conclude that Plaintiffs acted in bad faith in seeking declaratory judgment, or in initially disclaiming a defense under the GL policy in November, 2010 based on the same factors that led it to file this action.   I reach the same conclusion with regard to Plaintiffs' conduct in seeking summary judgment and then reconsideration in this litigation.  The relatively ambiguous and complicated nature of the underlying complaint, and the applicable case law, has been thoroughly discussed in my Opinions in this case – and the fact that I ultimately rejected Plaintiffs' arguments does not render those arguments unreasonable.  The record reflects Plaintiffs' convictions about the basis for these decisions, and there were reasonable grounds for those convictions.  There is no evidence suggesting otherwise.  Similarly, a reasonable jury could not conclude that the 50/50 allocation decision itself constituted bad faith conduct.  As Plaintiffs point out, Defendant sought coverage under both policies; an even distribution of defense costs cannot be considered an unreasonable response, under applicable standards and the surrounding circumstances.  Indeed, Defendant does not appear to suggest otherwise, and offers no evidence or argument otherwise. Accordingly, a reasonable factfinder could not find clear and convincing evidence that such conduct constituted bad faith.[5]

A genuine issue of fact, however, precludes the entry of judgment in favor of Plaintiffs on Defendant's bad faith claim in its entirety -- in particular, as it relates to Defendant's failure to provide any defense under the GL policy between July, 2011 and August, 2012.  In the first

---

[5] Defendant contends that Plaintiffs' present Motion constitutes bad faith, as it is unreasonable given that the defense obligation is moot.  I agree, as discussed in the body of the Opinion, that the defense obligation need not be addressed further.  By the same token, however, Plaintiffs' present conduct in this litigation, even if unreasonable, does not constitute a denial of benefits.  Thus, it cannot constitute bad faith or breach of contract and is not actionable pursuant to Defendant's counterclaims.

instance, my April 7 Opinion made clear that I ruled only on the "occurrence" issue, because the parties chose to present only that issue.[6]  Subsequently, Plaintiffs filed a second Motion, not only seeking reconsideration of the "occurrence" issue, but raising additional grounds for summary judgment.   My July 18 Opinion suggested that, under the circumstances, the duty to defend under the GL policy existed at the time of that Opinion, and would last until the claim was confined to recovery outside the scope of coverage – reflecting the broad but possibly provisional nature of the duty.[7]   In the meantime, for approximately one year following these Opinions, Plaintiffs continued to allocate costs solely to the E & O policy, and failed to defend under the GL policy.

They chose this course, despite their awareness that it might ultimately leave "insufficient limits in that policy to pay an award or settlement."  Despite Plaintiffs' stated view that "by agreement" an insufficiency problem could be "avoided," their course of action could reasonably be viewed as self-interested, and detrimental to Defendant's interests, and as bad faith; on the other hand, it could be viewed as something other than bad faith conduct – such as negligence, poor judgment, or even a good faith effort to protect the interests of both insurers and insured. In other words, there is a genuine issue of material fact, under all of the circumstances, regarding whether Defendant acted in good faith in denying a defense under the GL policy.  This claim must be submitted to a jury.

Plaintiffs suggest, however, that events before and after the alleged bad faith validate their conduct.  For example, they propose that Defendant's claim fails because they initially

---

[6] More specifically, I wrote, "I emphasize that the parties have raised and briefed this very narrow issue.  Although I would typically continue to an analysis of whether any other Policy provisions impact the insurer's defense obligation, I cannot do so now due to the posture of the parties' Cross-Motions."

[7] I stated that the duty had not been "conclusively established," because the duty would last only until the claim could be confined to recovery that is not within the scope of coverage.  I explicitly rejected Plaintiffs' contention that the duty did not exist at the time of the Order.

allocated costs to the GL policy, prior to disclaiming coverage under that policy.  This initial act

does not impact, and cannot serve to justify, Plaintiffs' later conduct.   Along similar lines,

Plaintiffs also assert that events in Iowa eventually supported their positions regarding the

"contract" and "professional liability" exclusions of the GL policy and the lack of an

"occurrence," thus post-hoc sustaining their earlier basis for denying a defense.[8]   Even assuming

that their arguments were borne out by evidence in the underlying trial, my April 7 conclusion

that the Complaint possibly pleaded such an event is not thereby expunged.  As of the time of my

decisions issued in this litigation, the claim had not been confined to an ineligible one.   Whether

the facts eventually ripened at some point into reasonable support for Plaintiffs' position is not

dispositive of reasonableness at all pertinent times; certainly, what is reasonable at one juncture

might well be unreasonable at another, depending on surrounding circumstances.   "[A] finding

that the insure[r] d[oes] not ultimately have a duty to cover the plaintiff's claim does not per se

make the insure[r]'s  actions reasonable."  Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 244

Fed. Appx. 424, 435 (3d Cir. 2007).

In proffering their arguments of non-coverage, Plaintiffs urge that I examine the Iowa

Court's Opinion, which was issued on February 7, 2013, and also developments, arguments, and

evidence arising during the Iowa trial.   However, this approach is wholly inconsistent with legal

standards applicable in this context.   The law is quite clear that the duty to defend is distinct

from the coverage duty; is determined solely from the four corners of a complaint; encompasses

any part of the complaint that is potentially within a policy's scope; and arises even in the case of

doubt whether the complaint falls within that scope.  See, e.g., Post v. St. Paul Travelers Ins. Co.,

---

[8] I note that Plaintiffs did not seek judgment in this Court on all grounds raised in their Complaint.   A reasonable factfinder might take into consideration that Plaintiffs sought judgment on some grounds for non-coverage pleaded in this action, and not others, and then asserted the narrowness of the Court's rulings in continuing to deny a defense under the GL policy.

691 F.3d 500, 517 (3d Cir. 2012). Because the duty to defend relies solely on the four corners of a complaint, "[i]n determining whether an insurer has a duty to defend, a court may not consider facts ascertained at trial, nor the outcome of the underlying lawsuit." Holy Ghost Carpatho-Russian Greek Catholic (Orthodox) Church v. Church Mut. Ins. Co., No. 11-1800, 2011 U.S. Dist. LEXIS 131449, at **12-13 (E.D. Pa. Nov. 14, 2011), aff'd, 492 Fed. Appx. 247 (3d Cir. 2012). In other words, what Plaintiffs seek is outside the limits of permissible inquiry. Even if the trial or its outcome eventually established circumstances incompatible with a duty to defend, both Plaintiffs' conduct and that duty as they existed prior to trial – on which Defendant focuses its remaining counterclaims – would remain unaffected.

Next, I address Plaintiffs' suggestion that their decision to allocate defense costs solely to the E & O policy is immune from attack, because in the case of multiple policies, the selection of an insurer to undertake the defense is to be made by the insurers. J.H. France Refractories, 626 A. 2d 502, 510 (Pa. 1993). That statement, however, is an oversimplification of J.H. France, and disregards considerations in J.H. France that are not at issue here. In J.H. France, the threshold liability of multiple insurers was already determined in light of the unique nature of the underlying latent-disease injury; the case thus addressed allocation of damages after insurer liability had been established. See University Mech. & Eng'g Contr. Inc. v. Ins. Co. of N.A., No. 1554, 2002 Phila. Ct. Com. Pl. LEXIS 41, **37-40 (Phila. May 1, 2002). In any event, the mere fact that an insurer is entitled to make a particular decision does not mean that it is entitled to do so in an unreasonable or unlawful manner. An insurer is also entitled to investigate claims, for example, but there is no doubt that the insured may seek redress for a bad faith investigation. Thus, any discretion that Plaintiffs might enjoy is not fatal to Defendant's claims.

### 2.  Damages

I next address Plaintiffs' argument that because Defendant in fact received a defense, and indemnity is not and will not be at issue, Defendant suffered no actual damages and cannot maintain a statutory bad faith claim.   In so arguing, Plaintiffs rely on language from various cases to the effect that the statutory remedies are "additional," and thus actual damages should be deemed a prerequisite to such remedies.

This interpretation, however, is not supported by either the statute or caselaw.  "Section 8371, which creates the cause of action for insurance bad faith, specifically empowers the trial court to award punitive damages 'if the court finds that the insurer has acted in bad faith toward the insured[.]' The statute provides no other language suggesting a pre-condition for the award of punitive damages. Thus, by statutory mandate, a finding of bad faith is the only prerequisite to a punitive damages award under section 8371. " Hollock v. Erie Ins. Exch., 842 A.2d 409, 418 (Pa. Super. 2004) (citations omitted).   In this particular matter, it would per se nullify alleged bad faith conduct pertaining to one policy, merely because of the happenstance that Defendant had purchased a second policy, and received the benefit of its bargain under that second policy. Moreover, the approach that Plaintiffs urge would render Section 8371 meaningless in many cases, such as when an insurer pays policy limits, but does so after a bad faith delay. Cf. Gideon v. Nationwide Mut. Fire Ins. Co., No. 7-40, 2008 U.S. Dist. LEXIS 26729 (W.D. Pa. Mar. 20, 2008).   It would also be incompatible with the purpose of fees and costs under Section 8371, which are intended to make a plaintiff whole. See Jurinko v. Medical Protective Co., 305 Fed. Appx. 13, 31 (3d Cir. 2008).

Moreover, I share the disinclination of the Pennsylvania Superior Court:  "As 42 Pa.C.S. § 8371 was promulgated to provide additional relief to insureds and to discourage bad faith

practices of insurance companies, we would be reluctant to impose any limitations of claims brought under section 8371 which do not appear in the plain language of the statute." <u>March v. Paradise Mut. Ins. Co</u>., 646 A.2d 1254, 1256 (Pa. Super. 1994).   The plain statutory language does not limit the recovery as urged by Plaintiffs, and such a limitation would lead to undesirable results.   Absent clear guidance from the Pennsylvania Supreme Court or our Court of Appeals, I will not add any requirement that does not appear in the statute.

### B.  CONTRACT CLAIMS

Next, I reach Plaintiffs' challenges to the viability of Defendant's claim for the implied duty of good faith and fair dealing.

Initially, I note that Defendant appears to conflate Counts I and II of its Counterclaims, and appropriately so.  "[T]he implied covenant of good faith and fair dealing gives rise to no independent action aside from breach of contract," because a "claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim." <u>Stewart v. SWEPI, LP</u>, No. 11-2241, 2013 U.S. Dist. LEXIS 6367, at *26 (M.D. Pa. Jan. 16, 2013).  Therefore, "a party is generally precluded from maintaining separate claims for breach of contract and breach of the covenant of good faith and fair dealing where both causes of action arise out of the same conduct by the defendant." <u>Benchmark Group, Inc. v. Penn Tank Lines, Inc</u>., 612 F. Supp. 2d 562, 583 (E.D. Pa. 2009).  In other words, the implied covenant arises from the contract, and its breach is a breach of the contract. <u>Zaloga v. Provident Life & Accident Ins. Co. of Am</u>., 671 F. Supp. 2d 623, 629-30 (M.D. Pa. 2009).  Accordingly, although it is a distinction without practical difference in this case, collapsing Counts I and II of Defendant's Counterclaim will serve the interests of economy and efficiency.  Count II will be deemed

subsumed under Count I of the Counterclaim, and I will thus enter judgment on Plaintiffs'

independent claim for breach of the implied covenant.

Regardless of the claim's foundational theory, Plaintiffs' challenge to Defendant's

contract claim rests on the lack of actual damages.  Defendant responds that it is entitled to

recover damages in the nature of fees and costs.[9]  Even if an insurer provides a defense and files

a declaratory judgment action, "said conduct constitutes a denial of an insured's claim. Therefore,

if the insurer's conduct is done in bad faith, a plaintiff can sue for breach of an implied duty of

good faith and fair dealing and recover attorney fees." Gideon, 2008 U.S. Dist. LEXIS 26729, at

*14.  This general principle allowing the recovery of fees, absent other actual damages, has been

applied both under the auspices of breach of contract and breach of the implied covenant of good

faith and fair dealing.  In other words, Defendant may recover fees for breach of contract, if that

contract was breached in bad faith.

I have already found that certain of Plaintiffs' conduct did not constitute bad faith under

Section 8371, and I make a similar finding as regards bad faith breach of contract.  True, "[t]he

difference between the covenant of good faith and fair dealing and an action for bad faith has not

been uniformly settled: 'Jurisdictions differ as to the meaning of good faith, and legal

commentators do not agree even on the basic nature of the implied covenant of good faith, and

its relationship to that legally actionable opposite of "bad faith."'" Zaloga, 671 F. Supp. 2d at 629

(quoting Couch on Insurance § 198:5 (3d ed. 2004)).  Nonetheless, having examined the record

and pertinent case law, I conclude that the conduct at issue in this case that will not sustain a

claim under Section 8371 will also not sustain Defendant's Count I.  Thus, the contract claim

shall proceed under the same factual parameters as Defendant's claim for statutory bad faith.

---

[9] Because the underlying defense was funded, and the action resolved in Defendant's favor, I must presume that
Defendant refers to fees and costs associated only with this declaratory judgment action.

## C. DECLARATORY JUDGMENT

Finally, both parties indicate that they intend to pursue their declaratory judgment claims, seeking, respectively, declarations of coverage and non-coverage in the concluded Iowa action.  A court may decline to exercise jurisdiction over a declaratory judgment action "if it determines that issuing a declaratory judgment would serve no useful purpose."  Alcoa v. Beazer E., 124 F.3d 551, 560 (3d Cir. Pa. 1997).   Moreover, a district court may decline jurisdiction sua sponte.  Firemen's Ins. Co. v. 3 R Elec., Inc., No. 12-18, 2012 U.S. Dist. LEXIS 150732 (M.D. Pa. Oct. 19, 2012).  As our Court of Appeals has noted, "[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum."   State Auto Ins. Co. v. Summy, 234 F.3d 131, 136 (3d Cir. 2000).

Here, a declaratory judgment would serve no purpose.  Issues surrounding the E & O policy, the Umbrella policy, and indemnification under any policy are either moot or fated never to ripen.   The parties suggest that I may consider the underlying trial in determining whether the evidence, attorneys' prosecutorial choices, and factual findings resulted in circumstances that are decisive of the duty to defend.   As discussed supra, however, this approach is in direct conflict with the constraints imposed by applicable legal standards, which preclude examination of extrinsic evidence or the ultimate resolution of disputed factual issues.  I have already made the decisions that were within the permissible scope of inquiry.  Thus, I am prohibited from making any declaration of the type sought, or of a type that might be useful in this case.[10]   The good or bad faith of Plaintiffs' conduct involves jury questions that will be decided in connection with Counterclaim Counts I and V.  Moreover, there are no federal issues presented in this action.

---

[10] These standards were more fully set forth in my April 7 and July 18 Orders.

For these reasons, I will relinquish jurisdiction over all declaratory judgment claims raised in this action.

### D.  SUBJECT MATTER JURISDICTION

Jurisdiction in this action is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332.   Following today's Order, the only claims remaining, and the attendant potential damages, are limited.  Therefore, it is no longer clear that the amount in controversy is met. Accordingly, the parties will be directed to submit their positions regarding this Court's continued exercise of jurisdiction.

### CONCLUSION

In sum, Defendant's Motion for Summary Judgment will be denied as to Counterclaim Counts I and V, because genuine issues of material fact are extant.   Those claims shall remain, however, solely as they pertain to the duty to defend under the GL policy from July, 2011 until the decision that defense costs would be allocated 50/50.   The Motion will be granted as to Counterclaim Counts II, III and IV because those Counts are moot, or Plaintiffs are otherwise entitled to judgment thereon.   Accordingly, it is no longer clear that this Court may exercise subject matter jurisdiction, and that issue shall be subject to briefing.

An appropriate Order follows.

**ORDER**

AND NOW, this 12th day of July, 2013, it is hereby ORDERED, ADJUDGED, and

DECREED that Plaintiffs' Motion for Summary Judgment is GRANTED in part and DENIED in

part, as more fully stated in the foregoing Opinion.   Within ten (10) days of today's date, the

parties shall submit position papers/briefs regarding this Court's subject matter jurisdiction.


BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court